

# UNITED STATES OF AMERICA
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

-vs-

| | |
|---|---|
| D-1 | DR. BORIS ZIGMOND, D.C. |
| D-2 | DR. JENNIFER FRANKLIN, M.D. a.k.a. "Dr. J" |
| D-3 | DR. CARLOS GODOY, M.D. a.k.a. "Dr. C" |
| D-4 | RODNEY KNIGHT a.k.a. "Jay"; a.k.a. "Bob" |
| D-5 | TARA MARCIA JACKSON a.k.a. "TJ" |
| D-6 | SASHANTI MORRIS a.k.a. "Stormy" |
| D-7 | ANNA FRADLIS a.k.a. "Mama" |
| D-8 | MARYNA PITSENKO |
| D-9 | SVETLANA SRIBNA a.k.a. "Lana" |
| D-10 | MARINA JACOBS |

                Defendants.

_____/

CASE NO. 15-CR-20283

HON. GEORGE CARAM STEEH

VIOLATIONS:
21 U.S.C. §§ 841(a)(1) and 846
18 U.S.C. § 1956(h)
18 U.S.C. § 922(g)

## **FIRST SUPERSEDING INDICTMENT**

THE GRAND JURY CHARGES:

## COUNT ONE

### 21 U.S.C. §§ 841(a)(1), 846 – Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances

D-1   DR. BORIS ZIGMOND, D.C.
D-2   DR. JENNIFER FRANKLIN, M.D.
　　　a.k.a. "Dr. J"
D-3   DR. CARLOS GODOY, M.D.
　　　a.k.a. "Dr. C"
D-4   RODNEY KNIGHT
　　　a.k.a. "Jay"; a.k.a. "Bob"
D-5   TARA MARCIA JACKSON
　　　a.k.a. "TJ"
D-6   SASHANTI MORRIS
　　　a.k.a. "Stormy"
D-7   ANNA FRADLIS
　　　a.k.a. "Mama"
D-8   MARYNA PITSENKO
D-9   SVETLANA SRIBNA
　　　a.k.a. "Lana"
D-10 MARINA JACOBS

Beginning on or about January 2013, and continuing until on or about May, 2015, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendants, DR. BORIS ZIGMOND, D.C., DR. JENNIFER FRANKLIN, M.D., DR. CARLOS GODOY, M.D., RODNEY KNIGHT, TARA MARCIA JACKSON, SASHANTI MORRIS, ANNA FRADLIS, MARYNA PITSENKO, SVETLANA SRIBNA, MARINA JACOBS, and others, known and unknown to the grand jury, did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree with other

2

persons not named in this First Superseding Indictment to commit offenses against the United States, that is, to knowingly, intentionally and unlawfully distribute and possess with intent to distribute controlled substances, including but not limited to, the Schedule II prescription drug Roxicodone and its generic equivalent (oxycodone HCl), in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

DR. BORIS ZIGMOND, a doctor of chiropractic (D.C.) at ZIGMOND CHIROPRACTIC PC in Oak Park, Michigan, was the leader in a large-scale prescription drug trafficking organization. The purpose of the prescription drug trafficking organization was to secure written prescriptions from medical doctors for controlled substances that could be filled at various pharmacies. The purpose of filling the controlled substance prescriptions was not for the legitimate treatment of patients, but rather to obtain controlled substances, customarily the Schedule II prescription drug Roxicodone and its generic equivalent (oxycodone HCl) that could be sold at a substantial profit in the illegal street market. Customarily, prescriptions were written by complicit doctors for 60, 90, or 120 pills of Roxicodone and its generic equivalent (oxycodone HCl). Each pill had a street value between approximately $10 to $40 during the time of the conspiracy.

DR. ZIGMOND did not see patients himself or write prescriptions, but used

3

"marketers"/ "patient recruiters" who paid money directly to DR. ZIGMOND or to one of his assistants for appointments with complicit doctors.  Each appointment cost $500-$600 cash and the "marketer" paid the money before a fake patient was seen by a complicit doctor. Insurance was not accepted. ZIGMOND set up the doctors in office suites in several different locations near the intersection of West Nine Mile Road and Greenfield Road in Oak Park, MI and provided an assistant to work with each doctor. ZIGMOND paid the doctors, the assistants, and paid for the office suites. The complicit doctors wrote prescriptions for the Schedule II drug Roxicodone and its generic equivalent (oxycodone HCl). The doctors also wrote "maintenance" drug prescriptions for common ailments involving blood pressure or heart illnesses, in an effort to make the Schedule II Roxicodone and its generic equivalent (oxycodone HCl) appear legitimate. Often, the doctors performed no physical examination on the "patient." When "patients" arrived at the doctor's office, they often had to provide a code name to the doctor's assistant before the assistant would allow the patient to see the complicit doctor.  Code names were provided by marketers in advance. Office assistants prepared "patient" files with false information and provided "Go-By" forms each indicating that the patient would receive Roxicodone or its generic equivalent (oxycodone HCl) and "maintenance" drug prescriptions. The false information in the patient files included

4

fake receipts for $100 payments per each patient per appointment. The fraudulent prescriptions written by the complicit doctors for the fake "patients" were given by the office assistants to the "marketers" who in turn filled the prescriptions and sold the Schedule II Roxicodone or the generic equivalent (oxycodone HCl) pills on the street at a profit. Fake "patients" and "marketers"/"patient recruiters" did not pay money directly to doctors at the time of their appointments during the conspiracy.

Between January 2013 and January 2015, an estimated 12,000 dosages of 30 milligram Schedule II drug Roxicodone or its generic equivalent (oxycodone HCl) pills were prescribed per week. Between February 2015 and April 2015, an estimated 7,200 dosages of Schedule II drug Roxicodone or its generic equivalent (oxycodone HCl) pills were prescribed per week, resulting in an estimated 1 million Schedule II drug Roxicodone or its generic equivalent (oxycodone HCl) pills attributable to ZIGMOND. From January 2013 to April 2015, ZIGMOND grossed an estimated $5.7 million from trafficking these controlled substances.

In furtherance of this conspiracy and to effect and accomplish the objects of it, DR. JENNIFER FRANKLIN, a medical doctor, between January 1, 2013 and October 31, 2014, the exact dates being unknown to the grand jury, worked in an office suite set up by ZIGMOND where DR. FRANKLIN fraudulently prescribed the Schedule II drug Roxicodone and its generic equivalent (oxycodone HCl) to

"patients" in the drug trafficking organization. The office suite was located at 23300 Greenfield Road Suite 116, Oak Park, Michigan. From June 1, 2013 to December 31, 2013, DR. FRANKLIN wrote approximately 763 Roxicodone or its generic equivalent (Oxycodone HCl) prescriptions, and from January 1, 2014 to October 2014, approximately 1,241 Roxicodone or its generic equivalent (Oxycodone HCl) prescriptions. On January 30, 2014, March 20, 2014, May 28, 2014, DR. JENNIFER FRANKLIN fraudulently prescribed Roxicodone and "maintenance" medications to a Drug Enforcement Administration special agent acting in an undercover capacity. On each occasion, DR. FRANKLIN conducted no physical examination, medical test, or procedure. Each appointment lasted approximately five minutes.

In furtherance of this conspiracy and to effect and accomplish the objects of it, DR. CARLOS GODOY, a medical doctor, between January 1, 2013 and March 5, 2015, the exact dates being unknown to the grand jury, worked in an office suite set up by ZIGMOND where DR. GODOY fraudulently prescribed the Schedule II drug Roxicodone and its generic equivalent (oxycodone HCl) to "patients" in the drug trafficking organization. The office suite was located at 21700 Greenfield Road Suite 380, Oak Park, Michigan. For the year 2013, DR. GODOY wrote approximately 1,871 Roxicodone or its generic equivalent (Oxycodone HCl)

6

prescriptions, approximately 1,726 Roxicodone or its generic equivalent (Oxycodone HCl) prescriptions in the year 2014, and approximately 347 Roxicodone or its generic equivalent (Oxycodone HCl) prescriptions from January 1, 2015 to March 5, 2015. On January 5, 2015, DR. CARLOS GODOY fraudulently prescribed Roxicodone and "maintenance" medication to both a Drug Enforcement Administration special agent acting in an undercover capacity and a confidential informant. On each occasion, DR. GODOY conducted no physical examination, medical test, or procedure. Each appointment lasted approximately five minutes and at each appointment, DR. GODOY wrote prescriptions for Roxicodone and "maintenance" medications.

In furtherance of this conspiracy and to effect and accomplish the objects of it, between January 2013 and May 2015, the exact dates being unknown to the grand jury, RODNEY KNIGHT functioned as a "marketer" and close assistant who collected funds or $500-$600 per each "patient" appointment for ZIGMOND and assisted in booking "patient" appointments with doctors who would fraudulently prescribe Roxicodone and its generic equivalent (oxycodone HCl). KNIGHT received $3,000 in advance for the three appointments with DR. JENNIFER FRANKLIN and the two appointments with DR. CARLOS GODOY' attended by an undercover special agent and a confidential informant. The

payments were made in cash to RODNEY KNIGHT by a confidential informant on or about January 16, 2014, February 27, 2014, May 1, 2014, and November 13, 2014.

In furtherance of this conspiracy and to effect and accomplish the objects of it, defendants TARA MARCIA JACKSON and SASHANTI MORRIS operated as "marketers"/ "patient recruiters" and paid $500-$600 per appointment for doctors complicit in the scheme to prescribe fraudulent Roxicodone and its generic equivalent (oxycodone HCl) prescriptions between January 2013 and May, 2015, the exact dates being unknown to the grand jury. TARA MARCIA JACKSON paid funds to KNIGHT for the appointments. SASHANTI MORRIS paid funds directly to ZIGMOND for the appointments.

On or about November 19, 2014, in Warren, Michigan, RODNEY KNIGHT received approximately $15,000 in cash from defendant TARA MARCIA JACKSON, for 34 patient appointments or "spots," in order to obtain unlawful prescriptions for the Schedule II drug Roxicodone or its generic equivalent (oxycodone HCl). JACKSON paid approximately $15,000 as she was given four "spots" for "patients" for free since she was paying for several, approximately thirty (30) at one time.

In furtherance of this conspiracy and to effect and accomplish the objects of

8

it, between January 1, 2013 and May, 2015, the exact dates being unknown to the grand jury, defendants ANNA FRADLIS, MARYNA PITSENKO, SVETLANA SRIBNA, and MARINA JACOBS operated as office and/or doctor's assistants in the prescription drug trafficking conspiracy and each participated in falsifying patient files. FRADLIS, SRIBNA, and JACOBS each consulted a list of preferred "marketers"/ "patient recruiters" to ensure that only known "marketers"/ "patient recruiters" were able to have their "patients" seen at appointments with the complicit doctors. FRADLIS, SRIBNA, and JACOBS each created fake receipts for $100 payments from "patients" to doctors for each appointment.

MARYNA PITSENKO operated as an assistant to defendant DR. BORIS ZIGMOND. PITSENKO faxed fake referrals for medical services from DR. ZIGMOND'S office to complicit doctor's offices. Office assistants FRADLIS, SRIBNA, and JACOBS received the fake referrals and utilized them to falsify "patient" files.

SVETLANA SRIBNA operated as an assistant to defendant DR. JENNIFER FRANKLIN. On January 30, 2014, March 20, 2014, and May 28, 2014, SRIBNA checked in "patients" as they arrived, including a Drug Enforcement Administration special agent, acting as a "marketer"/"patient" in an undercover capacity. On January 30, 2014, SRIBNA asked the Drug Enforcement Administration special

agent, acting as a "marketer"/ "patient" in an undercover capacity, "who sent you" when the special agent arrived to DR. FRANKLIN's office. The undercover special agent provided the code name he had previously been told to utilize, and SRIBNA provided "Go-By" forms to the undercover special agent. Following the appointment with DR. FRANKLIN, SRIBNA gave the fraudulent Roxicodone and "maintenance" prescriptions to the special agent. On March 20, 2014 and May 28, 2014, SRIBNA also gave Roxicodone and "maintenance" prescriptions to the undercover special agent after DR. FRANKLIN wrote the prescriptions.

MARINA JACOBS operated as an assistant to defendant DR. CARLOS GODOY. On January 5, 2015, JACOBS checked in the undercover Drug Enforcement Administration special agent, acting as a "marketer"/ "patient" and a confidential source, also acting as a "marketer"/ "patient". JACOBS provided "Go-By" forms to the special agent and the confidential source and gave the special agent and the confidential source the fraudulent Roxicodone and "maintenance" prescriptions DR. GODOY wrote.

All in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

## COUNT TWO

### 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering

D-1   BORIS ZIGMOND

The allegations contained in Count One of this Indictment are incorporated by reference. Beginning on or about January 2013, and continuing until on or about May, 2015, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, Southern Division, and Florida, the defendant, DR. BORIS ZIGMOND, D.C., did knowingly, intentionally combine, conspire, confederate, and agree with other persons not named in this Indictment to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

> To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to possess with the intent to distribute and distribution of controlled substances, including but not limited to, the Schedule II drug Roxicodone or its generic equivalent (oxycodone HCl), a felony under Title 21, United States Code, Section 841(a)(1), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form

of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

The manner and means used to accomplish the objectives of the conspiracy include in person transfers between and among ZIGMOND and others in Michigan and in Florida, and utilizing bank accounts, safe deposit boxes, and a storage unit.

On March 23, 2015 and March 26, 2015, the Internal Revenue Service – Criminal Investigation Division seized funds from seven bank accounts at banks including City National Bank of Florida associated with ZIGMOND, in the names of three other persons.   On March 26, 2015, City National Bank of Florida informed one of ZIGMOND's associates that their bank account was seized.

On March 27, 2015, during a court-authorized Title III intercept of ZIGMOND's cellular telephone, a call between the person whose account was seized and ZIGMOND was recorded and transcribed. ZIGMOND instructed that person to pick up another associate on Monday morning (March 30, 2015) and go to all "ten banks" and open safe deposit boxes and trade the large safe deposit boxes for small ones.   The person corrected ZIGMOND that there are only nine banks. ZIGMOND stated, "Look the idea is the following: in each one will be a 100, in one will put 40, how much, 50, 60, and the others must be empty, why doing so, in order you know, you when they are fishing in some will be empty, in other, you

12

understand me?"   The person told ZIGMOND that they would pick up the other associate Monday morning.

Law enforcement officers contacted all known banks where ZIGMOND or his associates maintained accounts.   Of the nine (9) banks contacted, as of April 24, 2015, only four banks had safe deposit boxes in the name of ZIGMOND or his known complicit associates. In addition, only two (2) new safe deposit boxes were opened on March 30, 2015. Two (2) banks already maintained safe deposit boxes in ZIGMOND or his associate's names prior to March 30, 2015.

On March 31, 2015, the two associates accessed three out of the four safe deposit boxes referenced above.

On March 31, 2015, the second associate opened a storage unit at Public Storage #20619, Unit 4197, Aventura, Florida. They paid $1,000 cash up front for a one year lease.

On April 29, 2015, law enforcement officers executed search warrants at all four safe deposit boxes referenced above. Only one box, at Bank of America in Hollywood, Florida contained cash. This box contained $37,400 cash.

On April 29, 2015, law enforcement officers seized $340,000 cash from the Public Storage unit.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE

### 18 U.S.C. § 922(g) – FELON IN POSSESSION OF A FIREARM

D-4   RODNEY KNIGHT
a.k.a. "Jay"; a.k.a. "Bob"

On or about April 29, 2015, in the Eastern District of Michigan, Southern Division, the defendant, RODNEY KNIGHT, after having previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year (felony offense), did knowingly and unlawfully possess a firearm, that is, one Romarm, GP WASR 10/63, 762 caliber, commonly known as an AK-47, bearing serial number 1981MF7474, said firearm having previously traveled in interstate and/or foreign commerce, in violation of Title 18, United States Code, Section 922(g)(1).

14

## FORFEITURE ALLEGATIONS
### (21 U.S.C. § 853, 18 U.S.C. §§ 924(d), 982(a), 28 U.S.C. § 2461(c) – Criminal Forfeiture)

1.  The allegations set forth above in this Indictment are hereby incorporated by reference as if they were set forth in full herein for the purpose of alleging forfeiture against each defendant pursuant to Title 21, United States Code, Section 853, Title 18, United States Code, Section 982(a), and Title 18, United States Code, Section 924(d) together with Title 28, United States Code, Section 2461(c).

2.  Pursuant to Title 21, United States Code, Section 853(a), upon conviction of the controlled substance offense in violation of Title 21, as alleged in Count One of this Indictment, the convicted defendant(s) shall forfeit to the United States: (a) any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of such violation; and (b) any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation.

3.  Upon conviction of violating Title 18, United States Code, Section 1956(h), as alleged in Count Two of this Indictment, the convicted defendant shall forfeit to the United States: (a) any property, real or personal, involved in such offense, or any property traceable to such property, and (b) any property, real

15

or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 982(a)(1).

4.   Upon being convicted of the firearms offense alleged in Count Three of this Indictment, in violation Title 18, United States Code, Section 922(g), the convicted defendant shall forfeit to the United States, any firearm and ammunition involved in or used in the knowing commission of such violation, pursuant to Title 18, United States Code, Section 924(d) together with Title 28, United States Code, Section 2461(c).

5.   **Substitute Assets:** If the property described above as being subject to forfeiture, as a result of any act of the defendant:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the Court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. 853(p) as incorporated by 18 U.S.C. 982(b) and Title 28, United States Code, Section 2461(c), to seek to forfeit any property of the defendant up to the value of the

16

forfeitable property described above.

6.     **Money Judgment:** Upon conviction of one or more violations alleged in this

Indictment, the United States will seek a forfeiture money judgment against

the convicted defendants in an amount representing the total amount of

proceeds obtained as a result of the aforementioned offenses, and/or the total

amount involved in the violations of Title 21, United States Code, Sections

841 and 846, and Title 18, United States Code, Section 1956(h), for which the

convicted defendants shall be jointly and severally liable.

**THIS IS A TRUE BILL.**

s/Grand Jury Foreperson
Grand Jury Foreperson

BARBARA L. McQUADE
United States Attorney

s/WAYNE F. PRATT                              s/JONATHAN J.C. GREY
WAYNE F. PRATT                               JONATHAN J.C. GREY
Chief, Health Care Fraud Unit                Assistant United States Attorney
Assistant United States Attorney             211 West Fort Street, Suite 2001
211 West Fort Street, Suite 2001             Detroit, Michigan   48226-3220
Detroit, Michigan   48226-3220               (313) 226-9116
                                             Jonathan.grey@usdoj.gov

Dated: October 15, 2015

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>15-20283 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

## Reassignment/Recusal Information This matter was opened in the USAO prior to August 15, 2008   [ ]

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes        ☒ No | AUSA's Initials: |

Case Title: USA v.  Dr. Boris Zigmond, ET AL

County where offense occurred :  Wayne

Check One:    ☒ Felony        ☐ Misdemeanor        ☐ Petty

_____Indictment/_____Information --- **no prior complaint.**
_____Indictment/_____Information --- based upon prior complaint [Case number:                    ]
_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: 15-CR-20283                    Judge:  George Caram Steeh

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| D-2 Dr. Jennifer Franklin, M.D. a.k.a. "Dr. J" | 21 U.S.C. 841 (a) (1), 846 | |
| D-3 Dr. Carlos Godoy, M.D. a.k.a. "Dr. C" | 18 U.S.C. 1956 (h) | |
| D-4 Rodney Knight a.k.a. "Jay";a.k.a "Bob" | 18 U.S.C. 922 (g) | |
| See Page Two | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

October 15, 2015
Date

S/Jonathan J.C. Grey
JONATHAN J.C. GREY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9116
Fax: 313-226-2372
E-mail address: jonathan.grey@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.
04/13

(PAGE TWO)

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | **Case Number** |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

## Superseding Case Information

Superseding to Case No: 15-CR-20283 _____     **Judge:**  George Caram Steeh _____

             Original case was terminated; no additional charges or defendants.
             Corrects errors; no additional charges or defendants.
             Involves, for plea purposes, different charges or adds counts.
   **(X)** Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| D-5 Tara Marcia Jackson a.k.a. "TJ" | | |
| D-6 Sashanti Morris a.k.a. "Stormy" | | |
| D-7 Anna Fradlis a.k.a. "Mama" | | |
| D-8 Maryna Pitsenko | | |
| D-9 Svetlana Sribna a.k.a. "Lana" | | |
| D-10 Marina Jacobs | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

October 15, 2015 _____
Date

S/Jonathan J.C. Grey _____
    JONATHAN J.C. GREY
    Assistant United States Attorney
    211 W. Fort Street, Suite 2001
    Detroit, MI 48226-3277
    Phone: 313-226-9116
    Fax: 313-226-2372
    E-mail address: jonathan.grey@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

04/13